# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

_____

FREDERICK DIAZ 86-B-2129,

                              Plaintiff,

                                                          DECISION AND ORDER

                    -vs-
                                                          04-CV-6094 CJS(P)

COMMISSIONER GLENN S. GOORD, *et al.*

                              Defendants.

_____

## APPEARANCES

For plaintiff:                    Frederick Diaz 86-B-2129, *pro se*
                                  Sullivan Correctional Facility
                                  Box 116, Riverside Drive
                                  Fallsburg, New York 12733-0116

For defendants:                   Gary M. Levine, A.A.G.
                                  New York State Office of the Attorney General
                                  144 Exchange Boulevard, Suite 200
                                  Rochester, New York 14614

## INTRODUCTION

This is a prisoners' civil rights suit brought pursuant to 42 U.S.C. § 1983 (2003), in which plaintiff sets forth two causes of action. In his first cause of action, in which he maintains that his Eighth Amendment rights were violated, he alleges: 1) that two corrections officers subjected him to the use of excessive force; 2) that a third corrections officer failed to intervene to stop the unlawful use of force; and 3) that both corrections officers and medical staff made false record entries. In his second cause of action, in which plaintiff maintains that his First Amendment rights were violated, he alleges that his atheist pendant and chain were unlawfully taken from him. Now before the Court is

defendant's motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

As a First Claim, plaintiff alleges in his complaint[1] filed on March 8, 2004 that he was summoned for an interview by defendant Corrections Sergeant Richard E. Simmons on December 2, 2002, the purpose of which, plaintiff asserts, was "to let plaintiff know that defendant Simmons was highly annoyed at plaintiff for having submitted complaints regarding the substantial loss of property plaintiff suffered (in an act of retaliation by the staff) when plaintiff was sent to the Special Housing Unit on May 25, 2002." (Compl. at 7.) In the evening of December 4, 2002, a fight between two inmates broke out in the B-Block yard. (Compl. at 3.) The complaint does not identify the location of the correctional facility to which it refers, but alleges that he is currently housed at Attica Correctional Facility. Plaintiff claims that he had nothing to do with the fight, but that two named defendants, Gary J. Pritchard ("Pritchard") and Richard Pistner ("Pistner"), both described as corrections officers at Attica Correctional Facility, escorted him from the B-Block yard into a hallway with his hands behind his back. (Compl. at 2-3.) There, the complaint states that both Pritchard and Pistner "roughly threw plaintiff up against the wall. Then without any sort of cause or even provocation from plaintiff, they commenced an assault upon his person."

---

[1]Plaintiff paid the then $150 filing fee. His complaint was initially screened by the Court pursuant to 28 U.S.C. § 1915A. (*See* Order, *Diaz v. Goord*, No. 04-CV-6094 (May 24, 2004) (# 2).) The Court notes that plaintiff has a pending motion before Magistrate Judge Payson, to whom this case has been referred for all non-dispositive pretrial matters, to amend the complaint to add a conspiracy charge under 42 U.S.C. § 1985.

(Compl. at 3.) Plaintiff contends that the assault lasted "for at least half a minute" and included being punched repeatedly in the face and body, being thrown onto the ground and being kicked and punched while on the ground. (Compl. at 3.)

Plaintiff further asserts that Pritchard and Pistner continued to beat him even when defendant Corrections Sergeant Jeffery P. Sekuterski ("Sukuterski") "re-entered the hallway along with all of the other officers, escorting in the two inmates who had been fighting." (Compl. at 4.) Plaintiff claims that Sekuterski "noticed that [he] was on the ground being assaulted by defendants Pritchard and Pistner," but "did nothing to curtail the abuse being inflicted upon plaintiff, even though he was directly responsible for overseeing the actions of the officers under his supervision." (Compl. at 4.) Plaintiff also claims that after being picked up and placed against the wall after the alleged beating, "he was again repeatedly punched all over his body and face by defendants Pritchard and Pistner…." (Compl. at 4.) Finally, plaintiff states that he was "slapped in the face by an unknown officer (just for kicks) and then ordered to pick up his property and walk back to his cell in his socks, bleeding and bruised, as a form of humiliation." (Compl. at 4.)

As a result of the alleged beating, plaintiff claims that his urine was tinged with blood until the next day, that his neck was sprained, and that it was painful to move for a week. He further states that two of the joints of his left hand were sprained, and that he had abrasions, lacerations and bruises to his right cheek, to the left side of his chin, to the area above his left eyebrow, to his upper lip, to his tongue, to his left knee, to his abdomen, to his neck and clavicle, to his scapula, and to his lower thoracic spine. (Compl. at 4.) He states that he was taken to the facility hospital by defendant Sergeant Dennis S. Wright ("Wright") and another officer. (Compl. at 5.) There, he contends, digital pictures were

taken of his injuries by Wright and that  defendant Sheryl Stewart ("Stewart"), a registered nurse, completed an injury report. Plaintiff further alleges that Wright engaged him in conversation, while at the facility hospital, and then distorted plaintiff's responses in order to file a false report "casting aspersions on plaintiff's credibility, despite not having any sort of evidence for doing so." (Compl. at 5.) Plaintiff contends that Wright asked to see his knuckles, and that the medical reports, which plaintiff obtained by a Freedom of Information Law request, contained the words, "knuckles reddened, both hands," in what plaintiff described as "very clumsily, and very deliberately inserted into the medical reports after plaintiff left the hospital." (Compl. at 6.)

Plaintiff also contends that the day after the assault, and again two days later, defendants Pritchard, Pistner and Sekuterski submitted false reports in response to the grievance he filed. (Compl. at 5.) Additionally, plaintiff asserts that despite numerous complaints made to him, defendant Superintendent Glenn S. Goord "never took any action to properly investigate plaintiff's situation nor to ensure his safety; relying, instead, on the very same individuals who were harassing plaintiff, or covering up the harassment, to conduct the investigations into plaintiff's allegations of misconduct." (Compl. at 6.) Plaintiff also states that  he kept defendants James Conway ("Conway"), Superintendent of Attica Correctional Facility, and Randy K. James ("James"), Deputy Superintendent at Attica, "liberally informed of the harassment being inflicted upon him by the staff at Attica, to the same or even greater extent than his complaints to defendant Goord." (Compl. at 7.) Plaintiff states that his grievance about this First Claim was dismissed by defendant Conway, but that the Central Office Review Committee forwarded the grievance to the Inspector General's Office and plaintiff was interviewed by the Inspector General on April

3, 2003. (Coml. at 8.)

As a Second Claim, plaintiff alleges that on May 25, 2002, he was escorted from his cell and taken to the Special Housing Unit ("SHU"), without explanation. (Compl. at 8.) There, he maintains was housed in a bare psychiatric cell overnight, and moved the next day to an SHU cell. When he asked for the return of his atheist pendant and chain, which he had been wearing when he was taken to SHU, he states that he was told they were sent to the office of the Inmate Records Coordinator. (Compl. at 8.) Plaintiff then states he wrote to the Inmate Records Coordinator requesting the return of his atheist pendant and chain, but received a letter from the legal officer stating that "his pendant would not be returned because it was suddenly being considered to be a 'potential weapon.'" (Compl. at 9.) He further contends that when he had  last been sent to SHU, on February 4, 2002, for a brief time, his pendant and chain had not been confiscated. (Compl. at 9.) Plaintiff also states that his atheist pendant and chain had been approved by the Chaplain's Office, as well as by Security at Attica, and that he had been wearing them around his neck at Attica  for over a year without incident, and that he had in fact worn it for three years at another correctional facility. (Compl. at 9.) Further, plaintiff contends that since he replaced his prior pendant through the facility's Package Room, "it is highly obvious that if anyone ever considered plaintiff's pendant to be a 'potential weapon' prior to the date in question, the pendant would never have been approved in the first place by either of these three departments and these facts would not be in evidence." (Compl. at 9.) Further, plaintiff asserts that his atheist pendant "was approved as a religious medal by the Department of Correction's own Director of Ministerial and Family Services, who has the final say in such matters." (Compl. at 9.) In addition, plaintiff also maintains that the defendants violated

their own directive No. 4202, which he claims states as follows:

> A permit may only be invalidated by the Deputy Superintendent for Security for overriding safety and security concerns and after consultation with the Director of Ministerial and Family Services. The inmate shall be informed in writing of the reason for a decision to invalidate a permit. If the inmate files a grievance within 14 days of receipt of such written notification, the item shall remain secured by th Deputy Superintendent of Security pending final resolution of the grievance.

(Compl. at 9.) Plaintiff contends that he complained about the confiscation of his atheist pendant and chain to defendants James and Conway, but they refused to return the items to him. Plaintiff further states that fourteen days after his transfer to SHU, the Administrative Segregation ticket that caused his transfer was dismissed, but he had already "endured the loss of a substantial amount of property (when his property was packed up and sent to the Special Housing Unit)…." (Compl. at 10.) He contends that he was sent to SHU "for the sole purpose of harassment and retaliation." (*Id*.) Further, plaintiff states that he complained about the confiscation of his pendant to defendant Goord. (Compl. at 10.) Finally, he attached to his complaint photographs of other religious emblems which he contends are more dangerous than his atheist pendant, but are not confiscated. (Compl. at 10; Compl. Ex. A.)

## STANDARDS OF LAW

### *Rule 12(b)(6) Standard*

In considering a motion for dismissal under Rule 12, defendant must show that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See H.J. Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 249 (1989); *see also* 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][a] (Matthew Bender 3d ed.). "In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit

itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).The court must view the complaint, and draw all reasonable inferences, in the light most favorable to the non-moving party. *Id.*; *see also* 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][b] (Matthew Bender 3d ed.) (court must accept plaintiff's factual allegations as true). Under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "all pleadings shall be so construed as to do substantial justice," Fed. R. Civ. P. 8(f). "This standard applies with particular strictness where the plaintiff files a pro se complaint alleging civil rights violations." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). On a Rule 12(b)(6) motion, the issue before the Court "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

> Finally, while the plaintiff need not set out in detail the facts upon which he bases a claim, he must provide the "defendant fair notice of the nature of the claim and the grounds upon which it rests." *Washington v. James*, 782 F.2d 1134, 1140 (2d Cir. 1986) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 [1957]). Where the allegations are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, they are meaningless as a practical matter and legally insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)(*citing Ostrer v. Aronwald*, 567 F.2d 551, 553 [2d Cir. 1977]; *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir. 1976); *Powell v. Jarvis*, 460 F.2d 551, 553 [2d Cir. 1972]).

*Parisi v. Coca-Cola Bottling Co.*, 995 F. Supp. 298, 300–01 (E.D.N.Y. 1998).

### Eighth Amendment Rights

The standard for an Eighth Amendment violation claim is well settled. *See Romano v. Howarth*, 998 F.2d 101 (2d Cir. 1993). In that case, the Court stated that Eighth

Amendment claims comprise both an objective and subjective component. Objectively, plaintiff must establish that the injury is sufficiently serious or harmful enough to reach constitutional dimensions. *Id*. at 104. Subjectively, plaintiff must prove that defendants acted wantonly. *Id*.

On the objective issue, not every contact is serious enough to reach constitutional dimensions. *See Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). As Judge Friendly wrote in that case, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id*. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." *Hudson v. McMilliam*, 503 U.S. 1, 9–10 (1982) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

With regard to the subjective component of the test, plaintiff must prove that the defendants acted maliciously. *See Romano v. Howarth*, 998 F.2d 101, 104–05 (2d Cir. 1993). In other words, plaintiff must show that defendants acted wantonly, maliciously and sadistically to cause harm. *See Brown v. Busch*, 954 F.Supp. 588, 594 (W.D.N.Y. 1997). As stated by the Second Circuit in *Romano v. Howarth*,

> To determine whether the defendants acted maliciously, a jury should consider the following factors: the extent of the plaintiff's injuries; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response. If an evaluation of these factors leads the jury to conclude that the defendants acted maliciously, wantonness has been established. And an Eighth Amendment violation has occurred. If, on the other hand, reflection upon these factors leads the jury to find that the defendants acted in a good–faith effort to maintain and restore discipline, no constitutional violation

has occurred because the subjective component of the claim has not been satisfied.

*Romano v. Howarth*, 998 F.2d at 105.

### First Amendment Rights

Plaintiff alleges that his First Amendment right to freely exercise his religion has been infringed. As the Second Circuit Court of Appeals held almost thirty years ago in *Burgin v. Henderson*, 536 F.2d 501 (1976):

> it is now common ground that a convicted defendant still has constitutional rights when the prison gate closes behind him.… And in the last decade or so, law suits by prisoners of various faiths have resulted in a number of decisions defining their rights.… Four years ago, this court held that limitations upon freedom of religion can be imposed only
>
> > if the state regulation has an important objective and the restraint of religious liberty is reasonably adapted to achieving that objective.

*Burgin*, 536 F.2d at 502-03 (*quoting* LaReau v. MacDougall, 473 F.2d 974, 979 (1972)) (other internal citations omitted). More recently, the Court of Appeals held that,

> The reasonableness of a prison regulation is measured by the three-step analysis outlined by the Supreme Court in *Turner* [*v. Safley*, 482 U.S. 78], 89-91 [1987].… First, we ask "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and [whether] the regulations are rationally related to that objective." *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989). Second, we look to see "whether there are alternative means of exercising the right that remain open to prison inmates." *Id*. at 417 (citations and internal quotation marks omitted). Third, we examine "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." *Id*. at 418.

*Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (some citations omitted).

The United States Supreme Court addressed the question of what constitutes a religion for protection under the First Amendment. In a case where unemployment compensation benefits were denied to the appellant because he terminated his job as a

result of his religious beliefs (which forbade participation in the production of armaments) the Supreme Court wrote, in finding the denial of unemployment benefits to be a violation of the appellant's First Amendment rights,

> [t]he determination of what is a "religious" belief or practice is more often than not a difficult and delicate task, as the division in the Indiana Supreme Court attests. However, the resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.

*Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981) (footnote omitted). In another case involving entitlements, the Court wrote, "[a] state may not 'exclude individual Catholics, Lutherans, Mohammedans, Baptists, Jews, Methodists, Non-believers, Presbyterians, or the members of any other faith, because of their faith, or lack of it, from receiving the benefits of public welfare legislation.'" *Thomas*, 450 U.S. at 716 (*quoting Everson v. Board of Education*, 330 U.S. 1, 16 (1947) (emphasis deleted)). The Seventh Circuit, in the context of discussing whether atheism is a religion for the purpose of First Amendment protection, held that, "[a]theism is, among other things, a school of thought that takes a position on religion, the existence and importance of a supreme being, and a code of ethics. As such, we are satisfied that it qualifies as Kaufman's religion for purposes of the First Amendment claims he is attempting to raise." *Kaufman v. McCaughtry*, 419 F.3d 678, 682 (7th Cir. 2005).

### *Personal Involvement of Supervisory Officials*

For a claim against state officials in their personal capacity to survive, a plaintiff must demonstrate "personal involvement of defendants in alleged constitutional deprivations...." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted); *see*

*also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) ("The rule in this circuit is that

when monetary damages are sought under § 1983, the general doctrine of *respondeat*

*superior* does not suffice and a showing of some personal responsibility of the defendant

is required.").

> Personal involvement of a supervisory official may be established "by
> evidence that: (1) the [official] participated directly in the alleged
> constitutional violation, (2) the [official], after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the [official]
> created a policy or custom under which unconstitutional practices occurred,
> or allowed the continuance of such a policy or custom, (4) the [official] was
> grossly negligent in supervising subordinates who committed the wrongful
> acts, or (5) the [official] exhibited deliberate indifference to the rights of
> [others] by failing to act on information indicating that unconstitutional acts
> were occurring'."

*Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (alterations

in original) (*quoting Colon*, 58 F.3d at 873).

## ANALYSIS

Defendants first move to dismiss the "official capacity" claims against all defendants.

(Compl. ¶ 13; Defs.' Mem. of Law at 3.) The Court agrees that plaintiff cannot sue

defendants in their official capacities because of the Eleventh Amendment prohibition. *See*

*Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Therefore, all plaintiff's "official capacity"

claims are dismissed.

Next, defendants move to dismiss the false report claims against Wright and

Stewart with regard to medical record entries as alleged in the complaint at paragraphs 38-

46. Defendants argue that plaintiff has no constitutional right to have information accurately

stated in his medical records. (Defs.' Mem. of Law at 4.) The Court agrees that even

assuming the report was false, it does not rise to the level of a constitutional violation. As

the Second Circuit has held,

> The prison inmate has no constitutionally guaranteed immunity from being
> falsely or wrongly accused of conduct which may result in the deprivation of
> a protected liberty interest. The plaintiff, as all other prison inmates, has the
> right not to be deprived of a protected liberty interest without due process of
> law.

*Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Thus, his claims against defendants

Wright and Steward for allegedly making a false medical record entry must be dismissed.

Next, defendants seek to dismiss plaintiff's claims against Pritchard, Pistner and

Sekuterski for allegedly filing false reports against him. (Compl. ¶¶ 33-36.) Again the Court

agrees with the defendants. Since plaintiff's complaint does not allege that he was

summarily deprived of a protected liberty interest, his claims that Pritchard, Pistner and

Sekuterski filed false reports do not rise to the level of constitutional violations. *C.f.*

*Morrison v. Lefevre*, 592 F. Supp. 1952 (S.D.N.Y. 1984).  Accordingly they are dismissed.

Defendants also seek to dismiss plaintiff's claims against defendants Goord,

Conway and James for lack of personal involvement and for failure to state a claim. (Defs.'

Mem. of Law at 5.)  Plaintiff contends that he complained numerous times to them  that he

was being harassed and that, apart from conducting insufficient investigations,  they did

nothing to resolve the situation. (*See* Compl. ¶¶ 47-54.)

In support of their position, defendants rely on *Johnson v. Goord*, No. 01 Civ. 9587

(PKC), 2004 U.S. Dist LEXIS 19658 (S.D.N.Y. Sep. 29, 2004), and cases cited therein. In

one of those cases, *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002), the

court observed that,

> a number of courts have held that "it is well-established that an allegation
> that an official ignored a prisoner's letter of protest and request for an
> investigation of allegations made therein is insufficient to hold that official

liable for the alleged violations." *Greenwaldt v. Coughlin*, 1995 U.S. Dist. LEXIS 5144, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995 ) (citations omitted); *accord Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (allegations that inmate wrote to prison officials and was ignored insufficient to hold those officials liable under section 1983); *Woods v. Goord*, 1998 U.S. Dist. LEXIS 16664, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) ("Receiving letters or complaints ... does not render [prison officials] personally liable under § 1983."); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.") (citations omitted). As one court noted, "if mere receipt of a letter or similar complaint were [**26] enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." *Walker v. Pataro*, 2002 U.S. Dist. LEXIS 7067, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002) (emphasis in original). Personal involvement will be found, however, where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint. *See, e.g., Ramos v. Artuz*, 2001 U.S. Dist. LEXIS 10327, 2001 WL 840131, at *8-*10 (S.D.N.Y. July 25, 2001) (personal [*364] liability where prison official "sent plaintiff numerous letters containing some explanation or justification concerning the issues raised by plaintiff"); *cf. Johnson v. Bendheim*, 2001 U.S. Dist. LEXIS 9679, 2001 WL 799569, at *6 (S.D.N.Y. July 13, 2001) (motion to dismiss denied as to prison official who received prisoners' grievances and denied them); *James v. Artuz*, 1994 U.S. Dist. LEXIS 5708, 1994 WL 174005, at *7 (S.D.N.Y. May 4, 1994) (denying summary judgment where a prison official conducted a de novo review of a prison disciplinary hearing); *Van Pelt v. Finn*, 1993 U.S. Dist. LEXIS 15951, 1993 WL 465297, at *6 (S.D.N.Y. Nov. 12, 1993) [**27] (prison official demonstrated personal involvement when he reviewed plaintiff's grievances).

*Johnson v. Wright*, 234 F. Supp. 2d 352, 363-364 (S.D.N.Y. 2002), *vacated and remanded* 412 F.3d 398 (2d Cir. 2005) (vacating the lower court's grant of summary judgment to defendant on the issue of whether defendants were deliberately indifferent to a serious medical need).

As the Second Circuit Court of Appeals stated in *Wright v. Smith*, 21 F.3d 496 (2d Cir. 1994):

It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of [**17]

damages under § 1983." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.) ("The rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required."), *cert. denied*, 414 U.S. 1033 (1973).… [A] defendant who occupies a supervisory position may be found personally involved in the deprivation of a plaintiff's constitutionally protected liberty interests in several ways:

> The defendant may have directly participated in the infraction…. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong…. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue…. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event….

*Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). In addition, supervisory liability may be imposed where an official demonstrates "gross negligence" or "deliberate indifference" to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place. *McCann*, 698 F.2d at 125; *see also Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989).

*Wright*, 21 F.3d at 501.

Here, plaintiff's complaint specifies that Goord, Conway and James "minimized and disregarded plaintiff's complaints of staff harassment, conducting only shoddy investigations into some of plaintiff's allegations despite the abundant evidence of harassment that plaintiff presented to them, including the foreseeable likelihood of an assault by the staff." (Compl. ¶ 52.) Defendants respond that the complaint does not indicate that plaintiff complained to any of the defendants about the poor quality of the investigations, therefore "the claims alleging poor investigations should be dismissed." (Defs.' Mem. of Law at 5.) The Court determines that plaintiff's complaint,  read liberally,

as the Court is required to do, sufficiently pleads a cause of action against defendants Goord, Conway and James. It may turn out after discovery that there is no evidence to support plaintiff's allegations against them, but at this point, they may go forward.

Finally, defendants argue that plaintiff's religious discrimination claim against Goord, Conway and James should be dismissed since it fails to state a cause of action, or in the alternative, since defendants are entitled to qualified immunity. (Defs.' Mem. of Law at 5-6.)

First, defendants claim that atheism does not qualify as a religion in need of protection under the free exercise clause of the First Amendment. The Court finds that this argument is foreclosed by the Supreme Court case law cited above. Next, defendants argue that "[e]ven if atheism qualifies as a religion protected by the First Amendment, the complaint fails to sufficiently allege how the denial of the pendant to plaintiff effected [sic] his constitutional right to practice atheism." (Defs. Mem. of Law at 6.) Defendants cite to *Purnell v. Lord*, 952 F.2d 679, 682 (2d Cir. 1992) in support of this contention. That case does not support defendants' argument. In *Purnell*, the Second Circuit upheld a restriction on the plaintiff's correspondence privileges with respect to a female inmate at another New York State correctional facility. The discussion at the cited page does not address whether that plaintiff's complaint was sufficient to state a cause of action, and the case was on appeal after a jury verdict.

The only case the Court has found that discusses atheism is *Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005). In that case, the plaintiff claimed that "the defendants' refusal to allow him to create [an atheist] study group violated his rights under both the Free Exercise Clause and the Establishment Clause of the First Amendment." *Id*. at 681. The Court determined that, "[t]he problem here was that the prison officials did not

treat atheism as a 'religion,' perhaps in keeping with Kaufman's own insistence that it is the antithesis of religion." *Id*. The Court went on to state that, "[w]e have already indicated that atheism may be considered, in this specialized sense, a religion. *See Reed v. Great Lakes Cos.*, 330 F.3d 931, 934 (7th Cir. 2003) ('If we think of religion as taking a position on divinity, then atheism is indeed a form of religion.'). Kaufman claims that his atheist beliefs play a central role in his life, and the defendants do not dispute that his beliefs are deeply and sincerely held." *Id*. at 682. In affirming the district court's grant of summary judgment to the defendants with respect to Kaufman's Free Exercise claim, the Seventh Circuit stated, "Kaufman introduced no evidence showing that he would be unable to practice atheism effectively without the benefit of a weekly study group. The defendants apparently allow him to study atheist literature on his own, consult informally with other atheist inmates, and correspond with members of the atheist groups he identified, and Kaufman offered nothing to suggest that these alternatives are inadequate." As in *Kaufman*, plaintiff has failed to allege how the confiscation of his atheist pendant and chain has infringed on his right under the Free Exercise Clause of the First Amendment to practice atheism. Consequently, defendants' motion to dismiss that claim for failure to state a cause of action must be granted.

## CONCLUSION

Defendants' motion to dismiss (# 5) is granted in part. The following claims are dismissed: all claims against defendants in their official capacities; claims against defendants Wright and Steward for allegedly making a false medical record entry; claims against Pritchard, Pistner and Sekuterski for allegedly filing false reports; plaintiff's religious discrimination claims against Goord, Conway and James. Plaintiff's claims against Goord,

Conway and James for their alleged failure to adequately investigate and address his grievances, and claims against Prichard, Pistner and Sekurterski for their alleged violations of plaintiff's Eighth Amendment rights may go forward.

SO ORDERED.

Dated:   March 20, 2006
          Rochester, New York

                    ENTER:

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge